# United States District Court
# Central District of California

| | |
|---|---|
| GARRETT ANDERSON,<br><br>Plaintiff,<br><br>v.<br><br>SPECIALIZED LOAN SERVICING, LLC; and DOES 1 through 200, inclusive,<br><br>Defendants. | Case No: 2:18-cv-08352-ODW (AGR)<br><br>**ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [17]; AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** |

## I. INTRODUCTION

Plaintiff Garrett Anderson filed his Complaint on August 20, 2018, in Los Angeles Superior Court against Defendant Specialized Loan Servicing, LLC, alleging claims for: (1) breach of implied covenant of good faith and fair dealing; (2) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601; (3) violation of California Civil Code section 2937; (4) negligence; (5) violation of California Business and Professions Code section 17200 ("UCL"); (6) wrongful foreclosure; (7) preliminary and permanent injunction; and (8) money had and received. (Notice of Removal Ex. A ("Compl."), ECF No. 1-1.) Defendant

subsequently removed the action based on federal question jurisdiction pursuant to the RESPA claim.

Presently before the Court is Plaintiff's Ex Parte Application for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Application") to enjoin Defendant from foreclosing on Plaintiff's home. (Appl. 1, ECF No. 17.) Defendant filed an Opposition to the Application. (Opp'n to Appl. ("Opp'n"), ECF No. 18.) Throughout the course of the litigation, Defendant has set and reset the date for foreclosure on Plaintiff's home. Initially, the foreclosure was set for December 12, 2018, then re-set for February 22, 2019, and is now currently set for March 22, 2019. (Appl. 3.) Plaintiff has requested that Defendant enter into a stipulation to stay the sale of Plaintiff's home until the case is resolved, however, Defendant has refused to do so; necessitating this Application. (*See* Appl. 4.)

For the following reasons, the Court **DENIES** the Application, but **ORDERS** Defendant to show cause why a preliminary injunction should not issue.[1]

## II.  FACTUAL BACKGROUND

Plaintiff signed a promissory note dated July 6, 2006, in exchange for a home equity line of credit serviced by Ditech Financial ("Ditech"). (Appl. 4.) The loan was secured by Plaintiff's residence located at 8730 Lookout Mountain Avenue, Los Angeles, California 90046. (*Id.*) Plaintiff routinely made two payments each month, one payment to cover the monthly payments due plus extra for the principal and a second principal-only payment. (*Id.* at 5.)

Beginning in approximately July 2017, Defendant began servicing Plaintiff's loan. (*Id.*) In July 2017, unaware that the servicer had changed, Plaintiff made two payments to Ditech. (*Id.*) On August, 14, 2017, Defendant purportedly sent a letter to Plaintiff informing him of a change in loan servicer effective on July 31, 2017;

---

[1] After carefully considering the papers filed in support of the application, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

however, Plaintiff claimed that he never received this letter. (*See* Opp'n Ex. A.) On August 21, 2017, Ditech returned the second July payment to Plaintiff and notified him that his account had been closed. (Appl. 5.) Plaintiff called Ditech who then informed him that Defendant was the new servicer of the loan. (*Id.*) Plaintiff then called Defendant to obtain the information regarding his account information. (*Id.*) Beginning on August 28, 2017, Plaintiff allegedly began making two payments to Defendant (similar to the payments made to Ditech). (*Id.*)

On September 11, 2017, Plaintiff called Defendant informing it that he had sent a payment on August 28, 2017, and that another payment was scheduled for September 12, 2017. (Declaration of Garrett Anderson ("Anderson Decl.") Ex. 9, ECF No. 17-2.) Plaintiff again contacted Defendant on September 29, 2017, advising Defendant that three payments were made to Defendant. (*Id.*) In October 2017, Defendant informed Plaintiff that he had outstanding payments due from July. (Appl. 5–6.) Plaintiff also learned from his bank that one payment made in September was denied by Defendant because Defendant could not determine what account to apply the payment. (*Id.* at 6.) By this time, Plaintiff received a notice of default on the loan from Defendant. (*Id.*) Plaintiff contacted Defendant by phone but was repeatedly informed by Defendant that he was in default. (*Id.*) On November 2, 2017, Plaintiff filed a written complaint with the Consumer Financial Protection Bureau ("CFPB"). (*Id.*) On November 29, 2017, Defendant responded to the CFPB complaint and indicated that Defendant had not received any payments from Plaintiff. (*Id.*) By this time, Plaintiff claimed that he contacted his bank and that his bank confirmed that Defendant had accepted five of his six payments. (*Id.*)

In December 2017, Plaintiff discovered that he was likely making payments to the wrong account number. (Opp'n 5.) However, Plaintiff continued to reference a wrong account number (albeit different from the one he previously referenced) until approximately March 2018 when Defendant informed Plaintiff of the correct account number. On December 12, 2017, Plaintiff wrote an email to Defendant, attaching a

redacted version of his U.S. Bank account summary and bank statement as proof of payment. (Appl. 6–7.) Plaintiff also informed Defendant that it was likely that he referenced an incorrect account number, but that five of the six payments sent to Defendant were processed and in Defendant's possession. (*Id.* at 7.) Defendant informed Plaintiff that his case was under review. (*Id.*)

On January 9, 2018, Plaintiff wrote an email to Defendant asking for a reply to his December 12, 2017 correspondence. (*Id.*) Plaintiff also informed Defendant that the payments he was making were no longer being applied to his loan. (*Id.*) Having not heard from Defendant, Plaintiff submitted another complaint to the CFPB, but Defendant responded that the matter was closed. (*Id.*) On January 26, 2018, Plaintiff again wrote to Defendant requesting a status update on the investigation. (*Id.*) On February 8, 2018, Plaintiff's attorney (and also domestic partner) wrote a letter to Defendant requesting that Defendant reach out to him to resolve the matter. (*Id.*) The letter also indicated that Defendant was refunding Plaintiff's payments. (Anderson Decl. Ex. 7.)

On March 3, 2018, Defendant responded, indicating that it was responding the Plaintiff's previous correspondences. (Appl. 7–8.) Defendant informed Plaintiff of the correct account number, and ultimately concluded that Defendant did not act in error in failing to credit Plaintiff's account. (*Id.* at 8.) As such, Plaintiff's account remained in default. (*Id.*)

Plaintiff represents that to date, Defendant has failed to apply payments totaling $3850 (eleven payments made, four of which were returned, and seven of which remain in Defendant's possession). (*Id.*) At some point, Plaintiff attempted to mail Defendant a payment by using the coupons attached to Defendant's bill statement, but Defendant returned the mailed payment and refused to apply the payment to the loan on the basis that Defendant was unable to accept funds for less than the total amount due (including the late fees and charges). (Anderson Decl. Ex. 10.) Defendant reported Plaintiff's account to the credit bureau agencies, resulting in damage to

Plaintiff's credit rating. (Appl. 8.) In addition, as of January 3, 2019, the late fees and finance charges to Plaintiff's account were in excess of $3139.85. (*Id.*) Plaintiff's latest bill statement reflect a past due amount of $4651.20, which Plaintiff claims does not reflect the $3850 he previously paid, $2450 of which purportedly remain in Defendant's possession. (*Id.*)

### III. LEGAL STANDARD

"An application for a temporary restraining order involves the invocation of a drastic remedy which a court of equity ordinarily does not grant, unless a very strong showing is made of a necessity and desirability of such action." *Youngstown Sheet & Tube Co. v. Sawyer*, 103 F. Supp. 978, 980 (D.D.C. 1952). The standard for issuing a temporary restraining order is "substantially identical" to that for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

Pursuant to Federal Rule of Civil Procedure 65, a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). To obtain this relief, a plaintiff must establish (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The issuance of a temporary restraining order may not exceed 14 days "unless before that time the court, for good cause, extends it for a like period." Fed. R. Civ. Proc. 65(b)(2).

In the Ninth Circuit, the *Winter* factors may be evaluated on a sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of the irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d

1127, 1135 (9th Cir. 2011) (internal quotations omitted). "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

## IV. DISCUSSION

### A. Likelihood of Success on the Merits

Plaintiff asserts eight claims in the Complaint, but moves for this temporary restraining order on the basis that he is likely to prevail on three of his claims: breach of the implied covenant, violation of RESPA, and violation of the UCL. Plaintiffs are not required to demonstrate they are likely to prevail on all of their claims for the issuance of a preliminary injunction. *See SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 983 (N.D. Cal. 2008) (granting preliminary injunction where plaintiffs showed likelihood of success on only some of their ten claims).

#### 1. Implied Covenant of Good Faith and Fair Dealing

"Under California law . . . all contracts contain an implied covenant of good faith and fair dealing." *San Jose Prod. Credit Ass'n v. Old Republic Life Ins. Co.*, 723 F.2d 700, 703 (9th Cir. 1984). The covenant "requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement." *Id.* A breach of the implied covenant "depends on the nature and purposes of the underlying contract and the legitimate expectations of the parties." *Mundy v. Household Fin. Corp.*, 885 F.2d 542, 544 (9th Cir. 1989) (internal quotation marks omitted). Accordingly, the implied covenant is "limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *McKnight v. Torres*, 563 F.3d 890, 893 (9th Cir. 2009) (internal quotation marks omitted).

Here, Plaintiff brings a claim for breach of the implied covenant based on his deed of trust, which "entitles the lender to reach some asset of the debtor if the note is

not paid." *All. Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1235 (1995). Plaintiff argues that as he has faithfully, and to the best of his ability, attempted to make payments on the loan, Defendant does not have a right to foreclose under the deed of trust. (Appl. 14.) Based on the record before the Court, it appears that Plaintiff has acted in good faith in attempting to make payments on his loan, but Defendant failed to credit Plaintiff for those payments. Defendant's notice of servicing transfer even informed Plaintiff that if he sent a payment to his older servicer, "the loan payment should be forwarded to Specialized Loan Servicing LLC by your old servicer and will not be treated as late." (Opp'n Ex. A.) However, despite Plaintiff making the payment to his previous loan servicer for July 2017, the loan was not forwarded, and Plaintiff's payment was treated as late.

Additionally, although the Court recognizes that Plaintiff referenced the wrong account number until approximately March 2018, the Court cannot understand why Plaintiff's numerous phone calls to Defendant between September 2017 and November 2017 did not resolve this issue. Based on Defendant's letter, Plaintiff called Defendant six times between September 2017 and November 2017, where Plaintiff advised Defendant that he had sent numerous payments, and where Defendant repeatedly responded that it was researching Plaintiff's concerns. Plaintiff even followed up with a number of emails and letters in December 2017, January 2018, and February 2018, to no avail. Plaintiff acted diligently in informing Defendant that he was making payments, yet, it took Defendant until March 2018 to inform Plaintiff that he was using the wrong account number. Even then, Defendant refused to credit Plaintiff with the payments he previously made despite still being in possession of some of the payments.

Defendant's main contention is that Plaintiff has only provided it and the Court with redacted bank statements. (Opp'n 6.) Defendant has been unable to ascertain if any of other payments were returned to Plaintiff's account. (*Id.*) Moreover, Defendant argues that it is Plaintiff's burden to establish that Defendant received the

payments. (*Id.*) Plaintiff has set forth evidence that he sent payments to Defendant. Plaintiff presented a transactional record from U.S. Bank, authenticated by a branch manager, that Plaintiff submitted electronic payments to Defendant between August 2017 and January 2018. (Decl. of Joel Loquvam ("Loquvam Decl.") Ex. 1, ECF No. 17-3.) Plaintiff also provided an account summary identifying which payments were accepted by Defendant and which ones were refunded. (Anderson Decl. Ex. 3, at 28.) However, the Court invites Plaintiff to supplement his Application by providing affidavits, declarations, authenticated transactional records, or other evidence indicating the refunds he received or did not receive from Defendant by **March 1, 2019**. Alternatively, Plaintiff may also submit unredacted copies of his bank statement in camera for the Court's review at the hearing set for **March 11, 2019, at 1:30 p.m.**

Accordingly, the Court finds that Plaintiff has established a likelihood of success on the merits that Defendant violated the implied covenant of good faith and fair dealing by failing to properly credit Plaintiff's account.

**2.    RESPA**

28 U.S.C. § 2605(b)(2) requires that notice of any assignment, sale, or transfer of the servicing of a federal mortgage loan shall be made to the borrower "not less than 15 days before the effective date of transfer of the servicing of the mortgage loan." Additionally, 28 U.S.C. § 2605(d) provides that "if the payment is received by the transferor servicer (rather than the transferee servicer who should properly receive payment) before the due date," "no such payment may be treated as late for any other purposes." Moreover, 28 U.S.C. § 2605(e) requires that a servicer that receives a qualified written request to respond within five days acknowledging receipt of the correspondence. A qualified written request is a written correspondence, other than payment, that (1) "includes, or otherwise enables the servicer to identify, the name and account of the borrower;" and (2) "includes a statement of the reasons for the belief of

the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 28 U.S.C. § 2605(e)(B).

On August 14, 2017, Defendant provided Plaintiff with notice that the loan had been transferred as of July 31, 2017. (Opp'n Ex. 1.) Plaintiff was only advised after the loan had been transferred, and not 15 days before the effective date of transfer as required by 28 U.S.C. § 2605(b)(2). Additionally, Plaintiff sent payment to his previous loan servicer as he was not aware that the servicer had changed, but Plaintiff was not credited with the payment, the payment was not forwarded to Defendant, and eventually treated as late in violation of 28 U.S.C. § 2605(d). Finally, Plaintiff submitted numerous qualified written requests to Defendant in which Defendant did not acknowledge receipt within five days or otherwise respond within thirty days as required by 28 U.S.C. § 2605(e)(2) including Plaintiff's emails[2] dated January 9, 2018; January 26, 2018; and February 8, 2018. Defendant did not respond to all of these correspondences until March 3, 2018.

Accordingly, Plaintiff has demonstrated a likelihood of success on his RESPA claim.

### 3. Unfair Competition

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). The "unlawful" prong is separate from the "unfair" and "fraudulent" prongs of the UCL, making unlawful conduct independently actionable even if it is not unfair or

---

[2] Defendant argues that Plaintiff did not submit the requests to the correct address as identified on its website. (Opp'n 7 n.1.) However, RESPA does not require that the request be submitted to a specific address, and Plaintiff did send a letter to Defendant's address as identified in the letter it sent Plaintiff. (*Compare* Anderson Decl. Ex. 7 *with* Opp'n Ex. 1.) Defendant's argument is disingenuous.

fraudulent. *Id.* Plaintiff argues that Defendant's conduct is both unfair and unlawful. As Plaintiff is likely to succeed on his claim pursuant to RESPA, Plaintiff will also likely succeed on his UCL unlawful claim based on the same violation. *See Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1169 (2002) ("A business practice is 'unlawful' if it is forbidden by law.'").

A business practice is unfair when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (1996) (internal quotation marks and citations omitted). For the reasons stated previously, the Court finds that Plaintiff is also likely to succeed under the unfair prong of the UCL as Defendant's actions are substantially injurious to consumers. *See* discussion *supra* Sections IV.A.1, 2.

### B.  Immediate and Irreparable Injury

In the context of evaluating whether to grant a temporary restraining order, harm is irreparable where it extends beyond pecuniary injury. *See Regents of Univ. of Cal. v. Am. Broad. Cos., Inc.*, 747 F.2d 511, 519 (9th Cir. 1984) ("[A] party is not entitled to a preliminary injunction unless he or she can demonstrate more than simply damages of a pecuniary nature."); *but see Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) ("Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm."). "[P]laintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The [temporary restraining order] must be the *only way* of protecting the plaintiff from the harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992).

Plaintiff claims that he will suffer irreparable harm as he will be deprived of his home as a result of the wrongful foreclosure. (Appl. 18.) As discussed above, if the foreclosure sale proceeds as scheduled, Plaintiff will suffer immediate injury because he will be deprived of his home and it will be difficult, if not impossible, for Plaintiff

to obtain reconveyance of his property from a subsequent purchaser. *See Walker v. Pierce*, 665 F Supp. 831, 843 (N.D. Cal. 1987) (finding that tenants seeking to enjoin foreclosure established irreparable injury due to the possibility of a loss of their residences); *see also Nichols v. Deutshe Bank Nat. Trust Co.*, No. 07-cv-2039-L-NLS, 2007 WL 4181111, at *3 (S.D. Cal. Nov. 21, 2007) ("The imminent foreclosure of Plaintiff's residence presents a threat of irreparable harm."). Although Plaintiff will suffer irreparable harm if the foreclosure sale proceeds, the harm is not imminent or within the Court's reach with a temporary restraining order as the sale is set for March 22, 2019.

## C. Balance of Equities & the Public Interest

The third factor balances potential harm to the plaintiff in the absence of a temporary restraining order with potential harm to the defendant if a temporary restraining order is granted. *Johnson v. Macy*, 145 F. Supp. 3d 907, 920 (C.D. Cal. 2015). "The public interest inquiry primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (quoting *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002)). "When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be 'at most a neutral factor . . . .'" (*Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138–39 (9th Cir. 2009) (quoting *Bernhardt v. Los Angeles Cty.*, 339 F.3d 920, 931 (9th Cir. 2003)).

In balancing the equities, the Court must evaluate the harm Defendant is likely to sustain if the restraining order is granted and compare it with the harm plaintiff is likely to suffer if the restraining order is not entered. As the foreclosure is not set to proceed until March 22, 2019, neither party are likely to suffer any harm if the temporary restraining order is not entered. *See* Fed. R. Civ. Proc. 65(b)(2) (stating that a temporary restraining order shall not exceed 14 days). However, as established above, a preliminary injunction is likely appropriate given Plaintiff's likelihood of

success and his likelihood to suffer irreparable injury through the foreclosure of his home. If a preliminary injunction issues, Defendant will not be able to recoup any of the debt allegedly owed to it by Plaintiff, approximately $6500 as of December 28, 2018. (Anderson Decl. Ex.8.) However, that harm does not outweigh the type of harm that Plaintiff is likely to suffer if the sale proceeds.

An injunction is also in the public interest. *See Sencion v. Saxon Mortg. Servs., LLC*, No. 5:10-cv-3108 JF, 2011 WL 1364007, at *3 (N.D. Cal. Apr. 11, 2011) ("[I]t is in the public interest to allow homeowners an opportunity to pursue what appear to be valid claims before being displaced from their homes."); *Dumas v. First N. Bank*, No. CIV. S-10-1523 LKK/DAD, 2011 WL 567358, at *2 (E.D. Cal. Feb. 15, 2011) ("[I]t is in the public interest to require lenders to comply with the California statutes enacted to protect homeowners from unnecessary foreclosures.").

On balance, the Court finds the *Winter* factors weigh in favor of granting a preliminary injunction, but not a temporary restraining order as a temporary restraining order would not enjoin the foreclosure sale on March 22, 2019. The Court is concerned that Defendant will continue to use the threat of a foreclosure, but will continue to move the date just outside the range of the Court's reach with a temporary restraining order.

**D.     Order to Show Cause**

While the Court finds that a temporary restraining order is not appropriate, Plaintiff has presented sufficient evidence warranting an Order to Show Cause as follows:

**IT IS ORDERED** that Defendant show cause on **March 11, 2019 at 1:30 p.m.**, in the courtroom of the Honorable Otis D. Wright II, located in Courtroom 5D at 350 W. 1st Street, Los Angeles, CA. 90012, why Defendant, should not be preliminary enjoined from proceeding with the foreclosure sale of the property located at 8730 Lookout Mountain Avenue, Los Angeles, California 90046, until the instant lawsuit is resolved.

**IT IS FURTHER ORDERED** that should Plaintiff wish to supplement his brief, including providing the Court with affidavits, declarations, authenticated transactional records, or other evidence indicating the refunds he received or did not receive from Defendant, he must do so on or before **March 1, 2019**. Alternatively, Plaintiff may also submit unredacted copies of his bank statement in camera for the Court's review at the hearing.

Should Defendant wish to submit a supplemental opposition brief in advance of the hearing on the Order to Show Cause, it must do so on or before **March 6, 2019**. Plaintiff shall not file any responsive pleadings, but may address any arguments raised in Defendant's supplemental opposition at the hearing.

## V. CONCLUSION

For the reasons set forth above, the Court denies Plaintiff's Ex Parte Application for Temporary Restraining Order (ECF No. 17), but issues an Order to Show Cause Why a Preliminary Injunction Should Not Issue set for hearing on **March 11, 2019 at 1:30 p.m.**

**IT IS SO ORDERED.**

February 25, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**